SMALL *et al.* v. JARRETT.

1. An attestation clause, appearing upon a testamentary paper and containing a recital of all the facts essential to its due execution as a will, as was the case here, raises a presumption that such paper was executed with all the requisite legal formalities pertaining to wills, if it be shown, as was done in the present instance, that the alleged testator and the witnesses actually affixed their signatures to the instrument.

2. In view of the fact that the attestation clause was duly subscribed by three witnesses to the will, and that the testatrix did, as a

matter of fact, in their presence sign the will, the only issue being as to whether the testatrix signed before the signatures of the witnesses were affixed to the attestation clause, the court did not err in charging the jury that the presumption that the will was duly executed would prevail unless the presumption had been overcome or rebutted by evidence.

3. The refusal of the court to charge in this case in express terms that " the attestation clause to a will is presumptive evidence only of the fact which it states," and that " it is not prima facie evidence of any facts which it does not recite," was not injurious to the losing party in this case, even if it is a correct statement of the law.

4. Under the evidence in the case the court did not err, in the absence of a written request therefor, in not giving a fuller charge upon the subject of the burden of proof than that contained in his instructions as given.

5. The attestation clause to the will being full and regular in form, and the testamentary capacity of the testatrix having been shown, there is no merit in the ground of the motion assigning error upon the admission in evidence of the will attacked on the ground that it had not been duly executed.

6. The evidence authorized the verdict.

No. 3743.   October 10, 1923.

Appeal from probate of will. Before Judge Jones. Hall superior court. March 31, 1923.

*E. D. Kenyon,* for plaintiffs in error.

*W. N. Oliver* and *W. S. Pickrell,* contra.

Beck, P. J. A paper purporting to be the will of Miss Jane C. Jarrett was offered for probate in solemn form in the court of ordinary, by the brother of the testatrix, who was named as executor of the will. A caveat containing several grounds was filed and was sustained, and probate of the will was refused. To this judgment an appeal was taken to the superior court, where the issue made by the caveat to the application for probate was tried, and a verdict rendered finding in favor of the propounder. The caveators made a motion for new trial, which was overruled.

1. The caveat to the probate of the will in question contained several grounds, but at the trial evidence was submitted to support only one ground, namely, that the instrument offered for probate " was not executed duly as her last will and testament by the said Jane Jarrett." The original motion for new trial contains the usual general grounds. In the first ground of the amendment to the motion error is assigned upon the following charge of the court: " Now I charge you that this will has what is denominated an attestation clause. That reads this way: ' Signed, sealed, de-

clared, and published by Jane C. Jarrett as her last will and testament, in the presence of us the subscribers, who subscribe our names hereto in the presence of said testatrix and of each other, this March 1st, 1911.' Signed, Jane C. Jarrett by her mark on the right-hand side, and then W. R. McDonald, L. C. Oliver, B. L. McGee, who sign as witnesses. Now, I charge you that with that attestation clause, that with nothing more than that, it would be presumed that the will, so far as the signing and so far as the witnessing of the will would be concerned, would be presumed to be properly done, as it appears on the paper in proper form and proper shape. Now that, without more, without evidence to the contrary, would not be a conclusive presumption; but the presumption that it was, carried by the attestation clause, is what you call a rebuttable presumption, that is, it is subject to be shown either way by witnesses to the will, or any other competent way, that this attestation clause, which is apparently and appears regular on its face, is not legal." This charge is not error. We content ourselves with this ruling without discussion of the question involved or elaboration of the principle ruled, in view of the fact that what is here laid down is in substance a restatement of the rule made in the case of *Underwood* v. *Thurman,* 111 *Ga.* 325 (36 S. E. 788), where the principle here ruled is laid down and elaborately discussed. In the case cited it was said: "An attestation clause, appearing upon a testamentary paper and containing a recital of all the facts essential to its due execution as a will, as was the case here, raises a presumption that such paper was executed with all the requisite legal formalities pertaining to wills, if it be shown, as was done in the present instance, that the alleged testator and the witnesses actually affixed their signatures to the instrument; nor does it matter that as to two of the witnesses there was such a failure of memory as that above indicated." Following this express ruling there is a discussion of the principle involved and copious extracts from numerous authorities in support of the position taken. This ruling disposes also of the question made by the assignment of error in the next ground of the amendment to the motion, numbered 5.

2. The court charged the jury in part as follows: "If that presumption hasn't been overcome or rebutted, then the presumption would carry and the will would be set up as the last will and

testament of Jane Jarrett, and you would find in favor of the propounders, that is, that it was a legal will. If the presumption has been overcome by evidence satisfactory to you, it don't make any difference how it is told, or how it is said, but if it satisfies you, proves to you that the will was not signed properly, that is, that the witnesses didn't sign after Miss Jane Jarrett signed the will, if that is true, then the will couldn't be propounded." The court, in using the word " presumption " here, was speaking of the presumption as to the due execution of the will, arising from the attestation clause duly signed by the witnesses. The uncontroverted evidence in the case proves that the testatrix did, as a matter of fact, sign the will by making her mark, her name being written by one of the witnesses. The question was whether her signature thus made was affixed before or after the witnesses affixed their signatures to the instrument. The full attestation clause is set forth in the judge's charge dealt with in the first division of this opinion. There was no question that the witnesses affixed their signatures in the order appearing on the face of the document, and, as said above, that the testatrix signed on that occasion and in the presence of these witnesses; the sole issue being, did she sign before the witnesses subscribed their names to the attestation clause? Under these circumstances the presumption in favor of the regularity of the execution of the will arose as a matter of law, under the decision in the *Underwood* case, supra, and the authorities there cited. The authorities differ as to whether or not a will is valid if the testator signs subsequently to the act of signing by the witnesses, if it is on the same occasion; but our court has held that the testator must sign before the witnesses attest the signature. That is the well-settled rule and requires no discussion. *Lane* v. *Lane,* 125 *Ga.* 386 (54 S. E. 90, 114 Am. St. R. 207, 5 Ann. Cas. 462); *Brooks* v. *Woodson,* 87 *Ga.* 379 (13 S. E. 712); *Duffie* v. *Corridon,* 40 *Ga.* 122. The charge was not erroneous, but a proper statement of the law applicable to the issue involved.

3. The court did not err in refusing written requests to give in charge to the jury certain instructions, each of which in substance embodied the rule that "the attestation clause to a will is presumptive evidence only of the fact which it states;" and that " it is not prima facie evidence of any facts which it does not recite." Conceding that these legal propositions are correct, as stated in

the written request, the refusal upon the part of the court to instruct the jury in this language does not entitle the movant to a new trial. If the jury had properly understood the instructions, they would not have benefited the movant in this case; because the attestation clause is virtually a recital of all the facts necessary to the proper execution of the will. The attestation clause recites that the will was " signed, sealed, declared, and published by Jane C. Jarrett as her last will and testament, in the presence of the subscribers," etc. That attestation clause, which was signed by the witnesses, meant that it had been signed by the testatrix at the time that the attestation clause was subscribed by the witnesses. " The witnesses to a will, as *subscribing* witness, attest the *signature,* and nothing else." *Duffie* v. *Corridon, 40 Ga. 122.* As Chief Justice Bleckley well said, in regard to a question similar to that presented here, " To witness a future event is impossible, whether it occur the next moment or the next week." *Brooks* v. *Woodson,* supra. And when the witnesses to this will subscribed their names to the attesting clause, they subscribed to a statement that the will had already been signed, sealed, etc. We have already ruled that the plaintiff in error could not have been injured by the refusal of the court to give the charges requested, had the charge been properly understood by the jury. But we do not think that the charges as requested should have been given, because the jury might have been led into the error of construing the charge to mean that the recital in the attestation clause did not raise the presumption as to the proper execution of the will, unless it recited in express terms that it was signed by the testatrix before the witnesses signed. We have pointed out the fact that the term " signed " related to a past fact and could only relate to a past fact, and meant that the signature of the testatrix was anterior to the subscription of the names of the witnesses to the attestation clause, and for that reason raised the presumption in regard to which the judge charged.

4. Error is assigned upon the failure of the court to instruct the jury that the burden of proof was on the propounder. The court did charge as follows: " Whenever a prima facie case is made out by the propounder of a will, then the burden of proof shifts to the caveators, and they must carry the burden by what is known as the preponderance of evidence. By preponderance of

evidence is meant that superior weight of the evidence upon the issues involved, which, while not enough to wholly free the mind from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other." In the absence of a written request to charge upon the subject of burden of proof, this charge was sufficient, in view of the evidence in the case. It would have been proper for the court to charge generally that the burden of proof was upon the propounder. But the charge as given, in the absence of a written request to charge more fully, was sufficient in view of the evidence in the case; that is, in view of the fact that the uncontroverted evidence of the attesting witnesses showed that the testatrix had testamentary capacity, and there was no evidence that the will was not freely and voluntarily executed. The uncontradicted evidence of the attesting witnesses and the apparent regularity in the execution of the will, that is, that it was duly signed and witnessed, carried beyond question the burden of proof that rested upon the propounder at the beginning of the case, and shifted the burden of disproving a prima facie case thus made to the caveators.

5. The ruling made in headnote 5 requires no elaboration.

6. The general grounds of the original motion for new trial raise the question as to the sufficiency of the evidence to support the verdict in favor of the propounder. After a careful consideration of this evidence we are of the opinion that the evidence, facts and circumstances, together with the deductions which the jury were authorized to draw from the evidence, authorized the finding. Under the testimony in the case a single, simple issue of fact was presented to the jury for their determination, and that, as we have said above, was whether the testatrix signed the will before the attesting witnesses subscribed their names to the attesting clause. The attesting witnesses were all introduced upon the trial of the case in the superior court. One of them, W. R. McDonald, sworn as a witness for the propounder, testified in part: that the testatrix called on him to witness a will; that he complied with the request; that he saw her sign the will — make her mark; that he witnessed the will at Miss Jarrett's request; that her mind was good; that he had know her for a long while, thirty years or more; when the will was signed, Mr. McGee, Mr. Oliver, and Mrs. Cato and the testatrix were present. Mr. Oliver asked her if that was

her last will, and she said it was. This is the will referred to. "I saw her make her mark. I don't remember whether we all signed it first, or whether Miss Jane [Jarrett] signed first. I have no recollection as to that."

L. C. Oliver, sworn as a witness, testified: "She said she wanted the property to go the way the will said for it to go. She didn't tell to whom. That is my signature. I made her mark with my finger on the pen. I wrote the name for her. . . It seemed to be a free act of her own. . . I swore on the former trial of this case that to the best of my recollection I put her mark to the will after the witnesses had signed it. Yes, sir, I have to stick to what I said on the former trial, because it is the truth to the best of my recollection. To make it clear and leave out any opinion, it is now the best of my recollection that I put Miss Jarrett's mark to this will after the witnesses signed it. I never witnessed but one will for her. . . No, I don't remember for certain which signed the will first, me or her. Yes, sir, I have my best recollection about it, and my best recollection is that I put her name to it after the witnesses. I wouldn't swear it to be positive; I couldn't."

B. L. McGee testified: "I knew Miss Jane Jarrett about nine or ten years before she died. I lived about a half mile from her. She called on me to witness a will, and at that time her mind seemed to be all right.. She said it was her last will and testament. 'This is the way I want my stuff to go when I am gone, and it won't shorten my days to have it fixed,' she said. . . I stated on the former trial of this case that to the best of my recollection Mr. Oliver put her mark representing her name to the will after the witnesses signed it. But I have thought about it, and I really don't know, I have studied about it, and I really don't know whether we signed it first or her. No sir, I wouldn't swear positively now. But on the former trial my best recollection was that he put her name to the will after the witnesses signed it. When the question was first put to me, it run through my mind that way, and I said that. No witnesses were in the room except the three witnesses to the will and Mrs. Cato. All the people who were in that room when this will was signed are here in court to testify. . . She said this was the way she wanted her property to go. She didn't mention who she wanted to have it. No

sir, since I studied about it, I don't remember who signed it first, not to be positive. I got to thinking about it, and can't remember how it was. I don't know whether it was me first or her."

Mrs. Clem Cato, sworn as a witness for the propounder, testified, in part: "I was at my home when I wrote this will. She came up to my house. Nobody came with her. She stayed a day and night with me, or such a matter. She told me her own suggesting. W. T. Jarrett was not with her when she came; he was not with her until she left. I didn't see anything of him. Her mind was good as any woman's. I knew her all her life. It was as good then as it ever was, and knew what she wanted. She told me how she wanted her property to go; said that was her purpose in coming there; wanted me to write it for her. I objected to writing it, and she pleaded to me so pitiful, and I consented to write it. I stated on the former trial of this case that to the best of my recollection Mr. Oliver made her mark. I also stated that to the best of my recollection he did this after the witnesses signed the will. The best I remember he did. Yes, sir, I still stick to it as my best recollection. . . No, sir, I wouldn't swear which signed it first, Miss Jane or these witnesses. It would be hard to swear positively to any occurrence that took place ten or twelve years ago, especially if any one has as much to see after and trouble over as I do. The only way we can get at back there is our best recollection. And my best recollection is that Miss Jane's name was put there after the witnesses' names. I don't remember exactly."

W. R. McDonald, recalled as a witness, testified: "Yes, each of us signed this in the presence of each other. We was all right there. Mrs. Cato and Miss Jarrett and we was all right there together. I don't know who signed it first."

L. C. Oliver, called, testified: "I saw these other witnesses sign this will in my presence. They signed in my presence, all right there together. Miss Jarrett was right there present in the room. She saw me or could have seen me sign it. I suppose she was looking at me. I can't say whether Miss Jarrett or the witnesses signed this will first. To the best of my recollection we signed it first, but I can't say for certain. We were in the dining-room, and signed it on a table, to the best of my recollection, and she was either sitting or standing between the table and the fire. All of this is

stated from the best of my recollection. I could swear positively to all in the room. I don't know whether she was at my right or left. I think she was at my back. That is the best of my recollection. As to all of this, I am stating it merely from the best of my recollection. Part of it I can swear positively to. I still stick to it that the best of my recollection is that we witnesses signed it before I put her name to it. I wouldn't swear it for certain, whether it was or not. She sent for me to come and witness it. It was at her request. I wrote Miss Jarrett's name for her, she asked me to.

B. L. McGee, recalled, testified: "When I witnessed this will, myself and Mr. McDonald and Mr. Oliver and Mrs. Cato was present. We all signed in the presence of each other. I saw them sign it. We was all there together. All was there when I signed it. They saw me sign it, or could have seen me. I witnessed this will at Miss Jane Jarrett's request. I suppose Miss Jarrett saw me witness it; she was sitting there. All of that I state from the best of my recollection. No sir, I didn't answer that it was an actual fact; I said the best of my recollection it was the way it all was. This happening eight or ten or twelve years ago, all of it is stated from the best of my recollection. But we all signed it. I know that, but the circumstances and position of each of us I don't remember about that. I don't know that the others were looking at me when I signed it, but I know I looked at them when they signed it. That is the way I stated on the other trial, that the best of my recollection was she signed it after we witnessed it; all of this is stated from my best recollection."

We have thought it best to set out in full all the evidence relating to the issue in this case; and, as we have announced, we are of the opinion that under the evidence it was a question for the jury to decide as to whether or not the testatrix signed the will before the witnesses signed the attestation clause. It is true that three of the witnesses testified in one part of their testimony that their best recollection was that the testatrix signed after the witnesses had signed. But this statement as to what their best recollection was on the part of two of the witnesses was very much modified; and the substance of their testimony is that after the lapse of a long time, many years, they can not remember who signed first. It is true they refer to an occasion anterior to which they

had testified stating their best recollection, but that occasion was many years after the will was executed, not less than ten years. We can not say as a matter of law that the jury should have found that the presumption arising from the apparently regular attestation was overcome by this evidence. The attestation clause contains the positive recital that the will had been signed when the witnesses affixed their signatures to the clause containing that recital. It is true when a witness states that to the best of his recollection such and such a thing occurred, he is swearing positively; for, as has been said more than once in our decisions, a witness can only swear to the best of his recollection. But the apparently positive testimony thus given must be read in the light of the other statements made by the witnesses introduced on the trial of this case, and the entire testimony must be considered in the light of all the circumstances. And in the light of the fact that ten years elapsed from the time the testatrix affixed her mark to this will as her signature to the time when these witnesses were called upon to testify, would it not be going too far for this court to say that a jury were not within the province allowed to them by law when they held that the recollections of witnesses, admitted by themselves to be dim, and necessarily weakened by the lapse of time, could not overcome the presumption arising the apparently regular execution of the will? Human experience may be appealed to in support of our holding here. Who, among those that read this opinion, that witnessed the execution of a paper over ten years since can recall the order in which the parties or the witnesses affixed their signatures? How many cannot even remember the fact of signing at all as a witness, except as they testify from a recognition of their own signatures? But it is a delicate matter for a court to reason about facts or express an opinion on the weight of the evidence; and we merely content ourselves with saying here that the jury were not compelled, under the evidence, to find that the testatrix in this case signed the will after the witnesses signed the attestation clause. Under that ruling the verdict stands.          *Judgment affirmed. All the Justices concur.*